## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Criminal No. 11-129(1) (DWF/SER) |
| Plaintiff, | **AMENDED ORDER ADOPTING IN PART AND MODIFYING IN PART REPORT AND RECOMMENDATION AND MEMORANDUM** |
| v. | |
| Derek Lee Preston, | |
| Defendant. | |

Andrew S. Dunne and Surya Saxena, Assistant United States Attorneys, United States Attorney's Office, counsel for Plaintiff.

Robert D. Sicoli, Esq., Law Offices of Robert D. Sicoli, Ltd., counsel for Defendant.

This matter is before the Court upon Defendant Derek Lee Preston's objections (Doc. No. 52) to Magistrate Judge Steven E. Rau's June 8, 2011 Report and Recommendation insofar as it recommends that Defendant's Motion to Dismiss for Speedy Trial Act Violation be denied and Defendant's Motion to Suppress be denied. Plaintiff United States of America filed a response to Defendant's objection on July 5, 2011 (Doc. No. 54).

The Court has conducted a *de novo* review of the record, including a review of the arguments and submissions of counsel, pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b).  The factual background for the above-entitled matter is clearly and

precisely set forth in the Report and Recommendation and is incorporated by reference for purposes of Defendant's objections.

Based upon the *de novo* review of the record and all of the arguments and submissions of the parties and the Court being otherwise duly advised in the premises, the Court hereby enters the following:

**ORDER**

1. Defendant Derek Lee Preston's objections (Doc. No. [52]) to Magistrate Judge Steven E. Rau's June 8, 2011 Report and Recommendation are **GRANTED IN PART AND DENIED IN PART** as follows:

    a. Defendant's objections as they relate to Magistrate Judge Steven E. Rau's recommendation that Defendant's Motion to Dismiss for Speedy Trial Act Violation are **DENIED**.

    b. Defendant's objections to Magistrate Judge Steven E. Rau's decision recommending that Defendant's Motion to Suppress Evidence be denied with respect to the decision of Officer Judkins' pat-down search of the Defendant is **GRANTED.**

2. Magistrate Judge Steven E. Rau's June 8, 2011 Report and Recommendation (Doc. No. [48]) is **ADOPTED AS MODIFIED.**

3. Defendant Derek Lee Preston's Motion to Dismiss for Speedy Trial Act Violation (Doc. No. [16]) is **DENIED**.

    4.      Defendant Derek Lee Preston's Motion to Suppress (Doc. No. [23]) is **GRANTED**.

Dated: July 26, 2012           <u>s/Donovan W. Frank</u>
                                      DONOVAN W. FRANK
                                      United States District Judge

## MEMORANDUM

**Introduction**

The Court acknowledges that 28 U.S.C. § 636(b)(1) provides in part that, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. . . . The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." The Supreme Court, citing extensive legislative history, determined that this language permitted, but did not require, the district court to rehear evidence before adopting or rejecting a magistrate's recommendation as to a dispositive matter. *See United States v. Wipf*, No. Crim. 03-111, 2003 WL 22283380, at *4 (D. Minn. Sept. 25, 2003) (citing *United States v. Raddatz*, 447 U.S. 667, 676 (1980)).

The Court has concluded that there is no necessity to rehear this matter or take additional testimony, given the record before this Court and the Court's *de novo* review of the entire matter heard by Magistrate Judge Rau, including, significantly, the testimony of Minneapolis Police Officers George Judkins and Tyrone D. Barze, Jr., and the

Minneapolis Police Department squad video. Except to the extent specifically noted herein, the Court adopts the detailed factual background set forth by Magistrate Judge Steven E. Rau.

Significantly, there is little dispute over the facts in this case and what the totality of the circumstances were on January 25, 2011, when Officer Judkins, driving alone at approximately 10:20 p.m., came upon the Ford Explorer in which the Defendant was a rear seat passenger, as set forth in the Report and Recommendation of Magistrate Judge Rau. (R&R at 2-13.) This Court, as did Magistrate Judge Rau, carefully reviewed the squad car video in this matter. Such a review was especially significant, on the record before the Court, because Officer Barze, who conducted the pat-down search of the Defendant, did not recall whether the other officers pulled the Defendant out of the vehicle or whether the Defendant exited the vehicle on his own. The video does show that the officer who was in front of Officer Barze stepped away from the rear passenger to allow Defendant to exit. However, contrary to the United States's assertion at the time of the hearing in front of the Magistrate Judge, the squad car video does not "clearly" show that the Defendant exited the vehicle on his own. In fact, based upon this Court's review of the video, the video shows that the Defendant was ushered along the back of the car toward Officer Barze for a pat-down. There are few, if any, other facts in dispute between the parties, on the record before the Court, with respect to those facts that constituted the totality of the circumstances that confronted the officers on the evening of January 25, 2011. It is noteworthy, as observed by Magistrate Judge Rau, that contrary to

Officer Judkins' testimony during the hearing in front of Magistrate Judge Rau, Officer Judkins' written report did not mention in any way whether the occupants of the vehicle were acting nervous or that their demeanor was otherwise suspicious.

**Defendant Derek Lee Preston's Motion to Dismiss for Violation of the Speedy Trial Act, 18 U.S.C. § 3161(b)**

Contrary to the objections and arguments of defense counsel, there was no Speedy Trial Act violation on the record before this Court.  The Magistrate Judge entered her oral decision with respect to detention at the conclusion of the hearing on March 11, 2011. Ten days later, on March 21, 2011, the Magistrate Judge entered a written detention order pursuant to 18 U.S.C. § 3142(i).  (Doc. No. 9.)  Pursuant to 18 U.S.C. § 3161(h)(1)(D) and (H), the time between the Court's oral decision off the bench and the written detention order is excludable from the Speedy Trial Act calculations.  The result is the same, whether the delay results from the matter being deemed pending until the final written order is filed pursuant to § 3161(h)(1)(D), which requires a prompt disposition once the motion has been heard, or § 3161(h)(1)(H), if it is deemed under advisement until the written decision is filed.

Defense counsel has suggested that the Report and Recommendation's reliance on *United States v. Leon*, No. 97-CR-124(14), 2008 WL 3906762, at *2 (D. Minn. Aug. 25, 2008), is misplaced because it is contrary to the rule of law established by *United States v. Moses*, 15 F.3d 774 (8th Cir. 1994).  Respectfully stated, the Defendant has incorrectly characterized *Leon*.  As observed by the United States, *Moses* did not consider whether

the time between a Court's oral detention order and the filing of a written detention order was excludable under the Speedy Trial Act. The issue was not addressed by the *Moses* court, in substantial part because the written detention order was filed on the same day as the detention hearing was held. Whether the Court uses or applies the phrase "under advisement," as that phrase is utilized in § 3161(h)(1)(H), or states that the matter was pending, pursuant to § 3161(h)(1)(D), to the extent that a written order is indeed required, the result is the same. There was no Speedy Trial Act violation and the decision by Magistrate Judge Rau is not contrary to *Moses*, for the reasons stated, or any other case cited by the defense.

The defense has suggested that "if the Court adopts the rule that any time between the court's oral order of detention and the date the court signs the form written order of detention provided to the court by the government is excludable under the [Speedy Trial Act], the length of a defendant's detention prior to an indictment being returned will depend on the vagaries of when the government drafts the order, when the government sends the order to the court, and on how long the court has the order before it is signed and filed." (Def's. Objections, Doc. No. 52 at 5.) The Court respectfully disagrees. The express language of 18 U.S.C. § 3161 prevents the speedy trial right of any defendant from being violated by, as the Defendant has asserted, the "vagaries of . . . the government." (*Id.*) 18 U.S.C. § 3161(h)(1)(D) dictates that the period of delay is only excludable at the "conclusion of the hearing on, or other *prompt* disposition of, such motion." (Emphasis added.) Moreover, 18 U.S.C. § 3161(h)(1)(H) requires that the

delay must be reasonably attributable to any period of time where a decision is under advisement by the Court.

Consequently, whether the matter is deemed pending or under advisement, the result is the same on the record before this Court. Even if the Court assumes that the phrase "under advisement" does not accurately describe the procedural status of the case, in this instance where the matter was ruled on by the Magistrate Judge off the bench at the conclusion of the detention hearing, as in many cases, the matter was still pending until there was a prompt disposition by way of a written order as required by 18 U.S.C. § 3142(i). Finally, even assuming for the purposes of the Defendant's objections that a Speed Trial Act violation occurred, which the Court has concluded did not occur, under the prejudice analysis set forth in 18 U.S.C. § 3162, the Court finds and concludes, as Magistrate Judge Rau did, namely, that there was no prejudice to the Defendant that would require or otherwise obligate this Court to dismiss even without prejudice. The Court has therefore denied Defendant's motion to dismiss because there was no Speedy Trial Act violation.

**Defendant's Motion to Suppress**

The facts, as noted in the Report and Recommendation incorporated into the Court's *de novo* review, are not in serious dispute except for how each party characterizes the squad car video. The parties agree that the encounter of January 25, 2011, between the Minneapolis Police Officers and the occupants of the vehicle in question was a *Terry* stop and therefore a seizure within the meaning of the Fourth Amendment. *See Terry v.*

*Ohio*, 392 U.S. 1, 16-19 (1968).  The *Terry* standard requires that officers be able to point to specific, articulable facts justifying the seizure.  *Id.* at 20-21.  Reasonable, articulable suspicion for a *Terry* stop requires less than probable cause of criminal activity, but the suspicion cannot be based upon "an inarticulate hunch."  *See Terry*, 392 U.S. at 22.  Of course, the existence of reasonable articulable suspicion is determined by the totality of the circumstances, taking into account an officer's deductions and rational inferences resulting from relevant training and experience.  *United States v. Arvizu*, 534 U.S. 266, 273-74 (2002).  Significantly, given the issue before this Court, once a suspect is legally stopped, "an officer who has reason to believe that the detained individual may be armed and dangerous may conduct a pat-down search for weapons to ensure officer safety."  *United States v. Davis*, 457 F.3d 817, 822 (8th Cir. 2006); *United States v. Horton*, 611 F.3d 936, 940-41 (8th Cir. 2010).  This test does not require an officer to be certain that a suspect is armed.  Rather, as noted in *Davis* and *Horton*, a pat-down is permissible if a "reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger."  *Terry*, 392 U.S. at 27; *Horton*, 611 F.3d at 941.

      Admittedly, this was a close call for this Court.  However, the Court concludes that Officer Judkins was not legally justified in ordering the pat-down search of the Defendant for weapons when the primary basis for the pat-down search was the officer's general, if not vague, second-hand knowledge, based on other officers' experience, that the Defendant, going back more than three years, had been known to carry firearms.  In the prior occasions Office Judkins identified, none of which involved his own, first-hand

knowledge, no firearms were ever found on the Defendant and he was not charged with possessing a firearm.

There is no doubt in the Court's mind that Officer Judkins proceeded in good faith. However, the officer had scarcely more than an inarticulable hunch based on incidents in the Defendant's past criminal history in which no gun had ever been found on the Defendant and he had not been charged with possession of a firearm. In the absence of any suspicious behavior by the Defendant or the other occupants in the vehicle in question that would have risen to the level of a specific, articulable suspicion, this Court has concluded that a reasonably prudent officer in the circumstances that the officers here found themselves in, with the generalized and quite stale information that they possessed, would not be warranted in the belief that their safety or that of others was in danger. While it is true that the Eighth Circuit has made it clear that "there is no bright-line test for determining when information is stale," in the context of an officer's knowledge of a Defendant's reputation for carrying firearms or drugs, it is also true that the facts must be sufficiently current and sufficiently specific so that a reasonably prudent officer in the circumstances that they found themselves in would be warranted in the belief that their safety or that of others was in danger. *United States v. Stachowiak*, 521 F.3d 852, 856 (8th Cir. 2008). The officers on January 25, 2011, did not have a specific, articulable suspicion, even though they acted in good faith. The officers had scarcely more than a generalized knowledge of Defendant's past criminal history, and even that did not involve the possession of guns or any personal contact between any of the officers involved or

between Officer Judkins and the Defendant. In the Court's view, none of the cases cited in the record are similar to the circumstances the officers found themselves in on the evening of January 25, 2011. Each case is factually and legally distinguishable. *United States v. Johnson*, No. 07-40012-01-SAC, 2007 WL 1651302 (D. Kan. June 6, 2007); *United States v. Collier*, No. 10-3144, 2011 WL 2150223, at *4 (8th Cir. June 2, 2011); *United States v. Lecraft*, No. 4:10-CR-21-FL, 2011 WL 127151 (E.D.N.C. Jan. 14, 2011); *Horton*, 611 F.3d at 941; *Stachowiak*, 521 F.3d 852.

Based upon the record before the Court, the Defendant had done nothing suspicious to indicate that he was violating the law in any way or that he may be armed and dangerous. There was no other conduct by the Defendant or the other occupants in the car, based upon the totality of the circumstances, and taking into account the officers' deductions and rational inferences resulting from training and experience, which created a specific, reasonable, and articulable suspicion that their safety or that of others was in danger.

For these reasons, the Court has granted Defendant's Motion to Suppress.

Finally, the parties agree that in the event the Court granted the motion of the Defendant, over the objection of the United States, to suppress all of the evidence seized as a result of the pat-down search, everything that occurred subsequent thereto must be

suppressed as the fruit of an illegal search pursuant to *Wong Sun v. United States*, 371 U.S. 471 (1963).

D.W.F.